# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

BHUPENDRA BHAKTA, )
ALKA BHAKTA, and )
BALAJI HOSPITALITY, LLC, )
)
      Plaintiffs, )
)
v. ) No. 4:19 CV 1379 DDN
)
CITY OF BRIDGETON and )
BRYAN YOUNG, )
)
      Defendants. )

## MEMORANDUM AND ORDER

Before the Court are the motions to dismiss filed by defendants City of Bridgeton (City) (Doc. 24) and Bryan Young (Doc. 26).[1]

## BACKGROUND

In their second amended complaint, plaintiffs Bhupendra Bhakta, Alka Bhakta, and Balaji Hospitality, LLC, allege the following facts. They own and operate the Capital Inn hotel in St. Louis County. In August 2009 they obtained from defendant City of Bridgeton the license and endorsement necessary under Missouri state law to operate their hotel business. After a pattern of very frequent property inspections, unreasonable stops of hotel guests, demands for repair due to *de minimis* violations of local regulations, and requests for private information about guests, in violation of state and City law, defendant City unlawfully denied plaintiffs' application for a license and hotel endorsement without a hearing. Thereafter, defendant City prosecuted plaintiff

---

[1] At the hearing on August 12, 2019, the parties agreed that Carole A. Stahlhut, a named defendant in earlier versions of plaintiffs' allegations, was not being sued as a defendant in the plaintiffs' second amended complaint, but is alleged only to be a representative of defendant City.

Bhupendra Bhakta for operating a hotel without a permit, which forced plaintiffs to close their business, denying them the use of their property. Thereafter, plaintiffs suffered foreclosure.

Plaintiffs allege the following claims:

Count 1:   violation of substantive due process;

Count 2:   violation of procedural due process for denying plaintiffs notice of a hearing, a hearing, and a right to appeal;

Count 3:   illegal search of the hotel;

Count 4:   violation of equal protection;

Count 5:   inverse condemnation;

Counts 6 and 7:   tortious interference with business expectancy;

Count 8:   breach of bond terms;

Count 9:   money had and received; and

Count 10:   breach of fiduciary duty.

Counts 1 through 4 seek relief under 42 U.S.C. § 1983 for violations of federal law; and Counts 5 through 10 seek relief under Missouri state law. (Doc. 19.)

## CITY OF BRIDGETON'S MOTION TO DISMISS

City moves to dismiss all of plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. To overcome such a motion a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the complaint must state a claim for relief that provides more than just labels and conclusions, and rises above mere speculation. *Twombly*, 550 U.S. at 555-56.

In reviewing plaintiffs' second amended complaint under this standard, the Court must accept all of plaintiffs' factual allegations as true and draw all inferences in their favor; but the Court is not required to accept the legal conclusions plaintiffs draw from the facts alleged.  *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012).  Additionally, the Court "is not required to divine the litigant's intent and create claims that are not clearly raised . . . and it need not conjure up unpled allegations to save a complaint."  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (internal quotation marks and citations omitted).

## Count 1:  Substantive Due Process

In Count 1 plaintiffs allege that on March 21, 2018, City denied their application for license (which City describes as a license renewal) and hotel endorsement without a hearing, even though they were in compliance with the relevant City Ordinance No. 12-50.  Plaintiffs allege they had paid their taxes, had only minor code violations, and had operated the hotel in a proper fashion.  Plaintiffs allege the denial of the license was arbitrary and capricious, without due process, without a rational purpose, and without a legitimate governmental purpose.  Defendants argue that plaintiffs did not allege that City's action was "truly irrational," which is necessary to allege a violation of substantive due process.

Under the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  U. S. Const., amend. 14, § 1.  Courts have construed this language to prevent government officials from abusing their power or employing it as an instrument of oppression. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989).  Substantive due process protects against governmental actions that are arbitrary and oppressive, not merely negligent or unreasonable. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986).

Here, plaintiffs challenge City's executive action in failing to renew their hotel permit and issuing citations to them.  When dealing with allegedly abusive executive action, "only the most egregious official conduct can be said to be arbitrary in the

constitutional sense," such as conduct that "shocked the conscience" or was "so brutal and offensive that it did not comport with traditional ideas of fair play and decency." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *see also Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002).

Plaintiffs allege the City's acts violated its own ordinances and Missouri state law. They allege the City's conduct was arbitrary, capricious, and not rationally related to a legitimate government purpose. Such statements and the facts they allege are not sufficient to state a federal constitutional claim. *L.C. Dev. Co., Inc., v. Lincoln County*, 996 F. Supp. 886, 888 (E. D. Mo. 1998) (ruling in the context of a zoning or land use dispute plaintiff "must allege something more than that the government decision was arbitrary, capricious, or in violation of state law" (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992)). The theory of substantive due process is properly reserved for truly egregious and extraordinary cases. *Chesterfield Dev. Corp.,* 963 F.2d at 1105. Plaintiffs must allege that the government action complained of is truly irrational and something more than arbitrary, capricious, or in violation of state law; truly irrational conduct is "conscience shocking in a constitutional sense." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

Plaintiffs have not alleged facts that state a claim upon which relief can be granted for a substantive due process violation. Count 1 is dismissed.

### Count 2:  Procedural Due Process

Plaintiffs allege they were entitled to notice and a hearing prior to any decision not to renew their license and endorsement. Defendant argues that such is not the law. To demonstrate a procedural due process violation, plaintiffs must show a deprivation of life, liberty, or property without sufficient process. *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004).

Assuming  plaintiffs have alleged a constitutionally protectable property interest in the renewal of their hotel license, to determine the process due, courts balance three factors: (1) the nature and weight of the private interest affected by the official action; (2)

4

the risk of an erroneous deprivation of such interest as a result of the procedures used; (3) the governmental function involved and state interests served by such procedures; and (4) the administrative and fiscal burdens that would result from the substitute procedures sought. *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

A protected property interest is a matter of state law involving a legitimate claim to entitlement, not a mere subjective expectancy. *Snaza v. City of Saint Paul*, 548 F.3d 1178, 1182–83 (8th Cir. 2008) (ruling plaintiff did not have a protected property interest in her application for a conditional use permit, because plaintiff failed to meet certain zoning regulations).

Defendant City argues that, while the revocation or suspension of a hotel license might involve a protected property interest, the failure to renew a hotel license does not. The City of Bridgeton's ordinances provides in relevant part as follows:

> No person shall operate a lodging establishment who does not possess a lodging establishment license from the City to operate such lodging establishment. Only a person who complies with the provisions of this Section *shall* be entitled to receive and retain such a lodging establishment license. The License Collector shall approve a lodging establishment license application if:
>
> 1.  The applicant is not delinquent in payment of lodging establishment license taxes at the time of application;
>
> 2.  The applicant demonstrates that it has a valid license required by the State of Missouri pursuant to Sections 315.005 to 315.065 R.S.Mo.; and
>
> 3.  No other grounds to deny such lodging establishment license exist under the law.

Bridgeton Code of Ordinances § 610.130.B (Doc. 41-1 at 2). Regarding renewals of licenses, the ordinance further provides:

> *Renewals.* Each lodging establishment shall demonstrate that it has fulfilled the conditions required by December first (1st). If the lodging establishment has satisfactorily demonstrated that it has fulfilled the conditions required, then the City of Bridgeton *shall* issue a new lodging

5

establishment license endorsement for such lodging establishment for the calendar year.

*Id.* at R.1.d (Doc. 41-1 at 8).

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it and more than a unilateral expectation of it; one must have a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). To determine whether plaintiffs have alleged a violation to a federal constitutionally protected property interest in the renewal of their business license the Court looks to applicable law. *Zenco Dev. Corp. v. City of Overland,* 843 F.2d 1117, 1119 (8th Cir. 1988) (ruling there is not protectable property interest in the renewal of a municipal liquor license).

In this case, Missouri state law affords a business licensee the right to notice and a hearing before a license is revoked or not renewed. *See* Mo. Rev. Stat. § 315.041.1. City's Ordinance 610.130 refers to "315.005 to 315.065 R.S.Mo." and uses the mandatory "shall" to give plaintiffs a legally sufficient expectancy that meets plaintiffs' pleading requirement. ("If the lodging establishment has satisfactorily demonstrated that it has fulfilled the conditions required, then the City f Bridgeton shall issue a new lodging establishment license endorsement for such lodging establishment for the calendar year.") Whether defendant has provided the process that is constitutionally due must be determined in further proceedings.

The motion to dismiss is denied as to Count 2.

### Count 3: Illegal hotel search

Plaintiffs allege the Bridgeton Police Department conducted an illegal search of every room in their hotel on September 24, 2016. Liability for a constitutional violation under 42 U.S.C. § 1983 may attach to a municipality only if the violation resulted from an official municipal policy or an unofficial custom, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); or a failure to train its employees that establishes a deliberate

6

indifference to the city's inhabitants. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018).

An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). A policy may take the form of a policy statement, local ordinance, regulation, or decision officially adopted and promulgated by a local government's officers. *Monell*, 436 U.S. at 690.

An unofficial custom, on the other hand, is characterized as misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Id.* at 691. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of Cty. Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). Specifically, a claim of unofficial custom requires:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to that custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)); *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013); *see also Brown*, 520 U.S. at 405.

The difference between an official policy and an unofficial custom is in the ultimate details, and may not be apparent at the pleadings stage. At the pleadings stage, a plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused the deprivation of the constitutional right. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Thus, "the failure

7

. . . to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to [a plaintiff's] claim for relief." *Id.* The plaintiff must nevertheless include factual allegations from which one could begin to infer that there was an unconstitutional policy or custom, to survive a motion to dismiss. *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588, 591 (8th Cir. 2004); *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E. D. Mo. 2010).

In their second amended complaint, plaintiffs allege that on September 24, 2016, the City's police department, without a warrant or probable cause, searched every room on the hotel premises, in violation of the Fourth and Fourteenth Amendments, "under color of law, and pursuant to a policy decision of the supervisors of the Police Department." (Doc. 19 at 9.) This is sufficient to overcome City's motion to dismiss.

The motion to dismiss is denied as to Count 3.

## Count 4: Equal Protection

Plaintiffs allege defendant City engaged in repeated and frequent visits and inspections of their property, continuously and repeatedly stopped their guests without reasonable cause, requested unreasonable inspections, demanded repairs for *de minimis* code violations, repeatedly requested private information about their guests, and made repeated demands for unnecessary repairs. (Doc. 19 at 10-11.) Plaintiffs allege City intentionally treated them "differently than others similarly situated" with no rational basis for the difference in treatment," "despite similar hotels in Bridgeton having similar or worse conditions with the intent to drive Plaintiffs out of business for redevelopment purposes because they deemed Plaintiffs' guests undesirable." (Doc. 19, ¶¶ 51-52.)

Defendant City argues that Court 4 lacks an allegation that it acted with a discriminatory purpose. To allege an equal protection claim, plaintiffs must allege facts that indicate defendant City, with a discriminatory intent, treated them differently than other hotel owners who were similarly situated. *Adam and Eve Jonesboro, LLC v. Perris*, 933 F.3d 951, 959-60(8th Cir. 2019). However, further, as City argues, an equal

8

protection claim is inappropriate in a context that involves the application of discretion in the performance of public duties, such as plaintiff alleges.

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*See Engquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 603 (2008); *Flowers v. City of Minn., Minn.*, 558 F.3d 794, 799-800 (8th Cir. 2009).

The governmental action plaintiffs describe in their complaint, the failure to renew a permit for the operation of a hotel, is infused with the discretion that the Supreme Court referenced as inappropriate for an equal protection claim.

Count 4 is dismissed.

### Count 5: Inverse Condemnation

Plaintiffs allege that defendant City "effectively took" their property by not renewing the hotel license without affording them due process "pursuant to the United States Constitution." (Doc. 19 at 12.) By failing to renew the license, plaintiffs allege the City denied them the use and enjoyment of their property. (*Id.*)

City argues that there can be no taking if plaintiffs had no protectable property interest in the renewal of their license. This argument is without merit, because plaintiffs have alleged sufficient information to overcome the motion to dismiss the Count 3 procedural due process claim.

City also argues that plaintiffs have not alleged any public use for which the City took whatever property interest they allege they had. To the Court's perception, defendant City invokes the law of Missouri with its citations of authority. (Doc. 25 at 11-12.)

9

Plaintiffs rejoin with citations to *Lingle v. Chevron U.S.A, Inc.*, 544 U.S. 528 (2005), and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). *Lingle* involved the application of the Fifth Amendment and whether a Hawaiian state statute that limited the rent oil companies may charge certain dealers effected a Fifth Amendment taking. The Court held that it did not. In doing so, the Supreme Court stated, "The paradigmatic taking requiring just compensation is a direct government appropriation of physical invasion of private property." 544 U.S. at 537. The Court, however, continues by discussing regulatory takings that are the functional equivalent of the physical taking, this concept requiring "the complete elimination of a property's value [as] the determinative factor." Because the Court ended up refining its approach to this area of law, the case was remanded.

*Lucas* involved a South Carolina state statute that in effect prohibited him from erecting habitable structures on land he had purchased. The landowner argued that the legislative ban on construction was a taking under the Fifth and Fourteenth Amendments. The Court summarily stated its ruling: "We think, in short, that there are good reasons for our frequently expressed belief that when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." 505 U.S. at 1019. Plaintiffs argue that the denial of the hotel license is a denial of all economic benefit of their hotel property which *Lucas* discusses.

To the Court's perception and apparently to defendant's, plaintiffs' Count 5 claim invokes Missouri state law for relief. In the captions of Counts 1 through 4, plaintiffs plainly cite "42 U.S.C. 1983," as the basis for these claims. Counts 5 through 10 bear no such designation. Defendant City argues the application of Missouri state law. Plaintiffs argue the application of federal constitutional law. As stated above, it is not the Court's purpose to fashion a claim that is contrary to the pleading's reasonable interpretation.

To state a claim for inverse condemnation under Missouri law, a party must allege "that their property was taken or damaged by the state for public use without just

10

compensation." *Watson v. City of St. Louis*, 956 S.W.2d 920,922 (Mo. Ct. App. 1997). Plaintiffs have not alleged that their property was taken for public use.

Even if the Court applied federal constitutional law, the cases cited by plaintiffs involved the effect of the language of state laws, not the discretionary application of City's hotel license ordinance. The Court concludes from a review of plaintiffs' allegations, under the federal standards they invoke, that they have not alleged sufficient non-conclusory facts that indicate that the denial of the license renewal deprived them of all economic benefit in their hotel property.

Claim 5 is dismissed without prejudice.

## **Counts 6 and 7:  Tortious Interference With A Contract**

City argues both that it is immune from suit by plaintiffs for the Counts 6 and 7 tort claims and that plaintiffs' allegations fail to state a claim upon which relief can be granted.

The City, as a government entity, is immune from suit for plaintiffs' tortious interference claims. Mo. Rev. Stat. § 537.600.1 ("sovereign or governmental tort immunity as existed at common law in this state…shall remain in full force and effect…"); *see Draper v. City of Festus*, No. 4:11 CV 1652 TCM, 2013 WL 5651380 at *22 (E.D. Mo., Oct. 15, 2013) ("A municipality has sovereign or governmental immunity from common law tort actions.").

Plaintiffs argue that, if defendant City has an insurance policy that covers plaintiffs' claims, City has thereby waived its sovereign immunity, *see* Rev. Stat. Mo. § 537.610, and that they are entitled to discover whether defendant has such insurance coverage. The Court agrees plaintiffs are entitled for investigate whether defendant City has waived its sovereign immunity.

On its argument that plaintiffs' Counts 6 and 7 fail to state a claim upon which relief can be granted, defendant City has adopted defendant Bryan Young's arguments in his motion to dismiss that plaintiffs have failed to state a claim upon which relief can be granted.

11

To state a claim for tortious interference under Missouri law, a party must plead facts plausibly alleging: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 316 (Mo. 1993).

In their second amended complaint, plaintiffs allege that in July 2018 they were attempting to sell their Capital Inn property and had a contract to sell it.  Defendant Young, while acting as an employee for the City, without a reasonable basis and no justification, stated to the potential buyer that the property had "significant structural problems" (Count 6) and "a lot of asbestos in it" (Count 7), when it did not have significant structural problems and did not have a lot of asbestos in it.  Plaintiffs allege that Young knew or should have known the statements were untrue and were malicious and intentional or with reckless disregard to plaintiffs' rights.  Plaintiffs allege that as a direct result of Young's conduct the potential buyer withdrew its offer.

Defendants argue that the alleged statements by Young were within his expertise as a City inspector, were within his discretionary job duties, and have not been shown by allegations that they furthered his personal interests.  For their argument, defendants cite *Nazeri, supra; Others First, Inc. v. Better Business Bureau of Greater St. Louis, Inc.,* 829 F.3d 576, 580 (8th Cir. 2016); *Stehno v. Sprint Spectrum, L.P.,* 186 S.W.3d 247, 252-53 (Mo. banc 2016).

In *Nazeri,* the Missouri Supreme Court held that the appellant had not pled sufficiently that defendant acted without justification.  "If the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests."  860 S.W.2d at 317.  Plaintiffs allege that defendant Young made the statements to plaintiffs' prospective buyer and they allege he had no justification for making the statements.  In the Court's view, such is a sufficient allegation that Young acted without justification.

The *Others First* case is inapposite, having been decided upon summary judgment, not at the pleading stage. Further, the context in which defendant Young made the alleged statements may be relevant to plaintiff's burden of proving he acted without justification.

*Stehno v. Sprint Spectrum, L.P.* is also inapposite, because it involved a jury verdict adverse to the plaintiff's claim. On transfer, the Missouri Supreme Court ruled that plaintiff did not establish a valid business expectancy or an absence of justification. 186 S.W.3d at 252.

Plaintiff has made these allegations with sufficient factual support in the amended complaint to avoid dismissal. Counts 6 and 7 are not dismissed.

## Count 8: Breach of Bond Terms

Plaintiffs allege that they paid defendant City $13,185 as a bond to insure the repair of a roof, but that the money was not returned upon completion of the repair in 2010 as had been agreed. (Doc. 19, ¶ 90-93.) Plaintiffs plead the failure to pay the money as two alternative claims, breach of the bond contract and for equitable relief for money had and received, which is discussed below.

Defendant City argues that, when a claim is founded upon a written instrument, the instrument must be alleged verbatim in the pleading, or a copy must be attached to the pleading as an exhibit, citing Mo. R. Civ. P. Rule 55.22(a). Plaintiffs did not attach the bond document on which they depend for the Count 8 claim. While, plaintiffs could have attached a copy of the bond to their complaint, federal pleading rules do not require it. The allegations of the City requiring payment for a purpose and then not returning the money when the purpose was accomplished, as plaintiffs allege, is sufficient.

The motion to dismiss Count 8 is denied.

### Count 9:  Money Had and Received

A claim for money had and received is "founded upon equitable principles whereby the law implies a contract to prevent unjust enrichment." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014).  An action for money had and received has always been favored in the law and the tendency of courts is to widen its scope.  *Investors Title Co. Inc. v. Hammonds*, 217 S.W.3d 288, 293 (Mo. banc 2007); *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. Ct. App. 2008); *Karpierz v. Easley*, 68 S.W.3d 565, 570 (Mo. Ct. App. 2002).  The specific elements required to state a claim for money had and received under Missouri law, are: (1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust.   *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. Ct. App. 2010); *Ward v. Luck*, 242 S.W.3d at 476.

In this case the plaintiffs' pleadings include facts that the defendant received a written check for $13,185 as bond for a roof repair and has retained the money since 2009.  The claim further contends the retention is unjust because the roof was repaired in 2010 and the occupancy permit was issue in 2014.  Further, the plaintiffs claim the failure of return of funds caused them damage, while the defendant benefits from holding the bond funds inequitably retained.

Accordingly, plaintiffs have pled the necessary elements for money had and received and stated a claim upon which relief can be granted.

The motion to dismiss is denied as to Count 9.

### Count 10:  Breach of Fiduciary Duty

Plaintiffs allege that in 2009, the City Engineer demanded that plaintiffs pay a cash bond in the amount of $13,185 payable to the City if plaintiffs did not repair the hotel roof.  The roof was repaired in 2010.  After the occupancy permits were issued in 2014, and after plaintiffs demanded return of the bond money, City failed to do so. Plaintiffs allege  "the city clerk by accepting cash bonds assumes a fiduciary duty" for the interest of the person posting the bond. They further claim, money deposited for a

purpose, to be returned on specific condition, is a deposit in escrow which creates a fiduciary duty. Defendants argue that plaintiffs do not allege facts that under Missouri law establish the existence of a fiduciary relationship between plaintiffs and the defendant City. The Court agrees.

Under Missouri law, a fiduciary relationship may arise "as a result of the parties' special relationship where the latter gains superiority and influence over the former." *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 394 (Mo. Ct. App. 1998). Plaintiffs' allegations do not establish any special relationship that imposes a fiduciary duty on the City. However, while there are grounds for dispute, the Court cannot state that the allegations that plaintiffs deposited the $13,185 with City to secure their obligation to repair the roof did not thereby give City a position of authority over plaintiffs subject to the duty to return the deposit and not use it for other purposes, did not establish a fiduciary status on the part of City. *Cf. Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 86-87 (Mo. Ct. App. 1994).

The motion to dismiss is denied as to Count 10.

## DEFENDANT YOUNG'S MOTION TO DISMISS

Defendant Bryan Young moves to dismiss Counts 6 and 7 for tortious interference with a business expectancy. These claims are brought against him in his official capacity, as well as against defendant City. In an official-capacity suit, "the real party in interest . . . is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, "[t]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quoting *Hafer*, 502 U.S. at 27); *see also Remington v. Hoopes*, 611 Fed. Appx. 883, 885-86 (8th Cir. 2015).

The parties stipulated that defendant Young would be added to this suit in his official capacity. (Docs. 13, 16, 22.) Plaintiffs' allegations against defendant Young concern his official duties. Their claims against him are duplicative because he is not sued in his individual capacity; plaintiffs' claims against him are ultimately against

defendant City.  *See Williams v. Robinson*, 623 Fed. Appx. 832 (8th Cir 2015) (dismissing official-capacity claims against county employees when county was also sued).

For these reasons,

**IT IS HEREBY ORDERED** that the motion of defendant City of Bridgeton to dismiss plaintiffs' second amended complaint (Doc. 24) **is sustained as to Counts 1, 4, and 5.  As to Counts 2, 3, 6, 7, 8, 9, and 10 the motion is denied.**

**IT IS FURTHER ORDERED** that the motion of defendant Bryan Young to dismiss Counts 6 and 7 against him (Doc. 26) **is sustained.**

          /S/   David D. Noce
     **UNITED STATES MAGISTRATE JUDGE**

Signed on June 9, 2020.